AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
Southern District of Ohio

FILED
RICHARD W. NAGEL
CLERK OF COURT

2017 NOV 30 PM 12: 15

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | Case No. **3 : 17 mj 551** |
| *or identify the person by name and address)* | ) | |
| CELLULAR TELEPHONE ASSIGNED | ) | |
| CALL NUMBER 937-532-0168 | ) | |
| | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
SEE ATTACHMENT A - This court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:
SEE ATTACHMENT B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| | SEE ATTACHMENT C |

The application is based on these facts:

SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA MICHAEL RUNNELS, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **11-30-17**

_____
*Judge's signature*

City and state: DAYTON, OHIO

SHARON L. OVINGTON, U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with cellular telephone number 937-532-0168 that is stored at premises owned, maintained, controlled, or operated by Sprint Spectrum, L.P., a wireless provider headquartered at 6800 Sprint Pkwy, Overland Park, KS.

**ATTACHMENT B**

**Particular Things to be Seized**

## I. Information to be disclosed by Sprint Spectrum, L.P.

To the extent that the information described in Attachment A is within the possession, custody, or control of Sprint Spectrum, L.P., including any messages, records, files, logs, or information that have been deleted but are still available to Sprint Spectrum, L.P. or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), is required to disclose the following information to the government for each account or identifier listed in Attachment A:

a. All voice mail, text, and multimedia messages stored and presently contained in, or on behalf of the account or identifier;

b. All business records and subscriber information, in any form kept, pertaining to the individual accounts and/or identifiers described above, including subscribers' full names, addresses, shipping addresses, date account was opened, length of service, the types of service utilized, ESN (Electronic Serial Number) or other unique identifier for the wireless device associated with the account, Social Security number, date of birth, telephone numbers, and other identifiers associated with the account.

**II. Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 26 U.S.C. §§ 5861(c) & (d), 18 U.S.C. §§ 641 and 844(e) involving Joel Montgomery since August 1, 2012, including, for the account listed on Attachment A, information pertaining to the following matters:

(a) 26 U.S.C. § 5861 (c)- Receive/possess a firearm, silencer and/or destructive device made in violation of federal law; 26 U.S.C. § 5861 (d) - Receive/possess a firearm, silencer and/or destructive device not registered in the National Firearms Registration and Transfer Record; 18 U.S.C. § 641 - Retaining and concealing stolen property with the intent to convert to personal use or gain; and 18 U.S.C. § 844(e)-Interstate threats involving explosives.

(b) Evidence indicating how and when the cellular device and associated cellular service was used to determine the chronological context of cellular device use, account access, and events relating to the crime under investigation;

(c) Evidence indicating the geographic location of the cellular device at times relevant to the investigation;

(d)  Evidence indicating the cellular device owner or user's state of mind as it relates to the crime under investigation;

(e)  The identity of the person(s) who created the account associated with the cellular device and/or used the cellular device, including records that help reveal the whereabouts of such person(s).

ATTACHMENT C

26 U.S.C. § 5861 (c)   Receive/possess a firearm, silencer and/or destructive device made in violation of federal law

26 U.S.C. § 5861 (d)   Receive/possess a firearm, silencer and/or destructive device not registered in the National Firearms Registration and Transfer Record

18 U.S.C. § 641        Retaining and concealing stolen property with the intent to convert to personal use or gain

18 U.S.C. § 844(e)     Interstate threats involving explosives

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR SEARCH WARRANT**

I, Michael Runnels, being duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.  I am a Special Agent of the Federal Bureau of Investigation (FBI) and have been for over 8 months.  I am currently assigned to the FBI's Cincinnati Field Office, Dayton Resident Agency.  During my tenure with the FBI, I have personally participated in criminal and national security investigations.  As such, I have gained both knowledge and experience in gathering and collecting evidence related to violations of Title 18 of the United States Code and other violations of federal law.  Prior to joining the FBI, I was employed with a private security company gaining knowledge and experience in numerous internal investigations.

2.  This affidavit is submitted in support of an application for a search warrant to search Sprint Spectrum L.P. account 937-532-0168.

1 - AFFIDAVIT

## PROBABLE CAUSE

3.    The facts set forth in this affidavit are based upon your Affiant's personal observations, my training and experience, information provided by various law enforcement agents and witnesses familiar with this investigation, and other documents obtained and generated during the course of this investigation.   This affidavit is intended to show that there is probable cause for the requested search warrant and does not purport to set forth all of my knowledge of, or investigation into, this matter.

4.    **Joel Benjamin Montgomery** (hereinafter "MONTGOMERY") was born January 16, 1969.  His permanent residence is 2302 Schnebly Road, Spring Valley Twp., Ohio.  The Bureau of Alcohol, Tobacco, Firearms, and Explosives (BATF), the FBI, and other law enforcement agencies have been investigating MONTGOMERY, a former commissioned officer in the United States Air Force (USAF) Reserve and former subcontractor for Department of Defense (DoD) Contractor Macaulay-Brown, Inc. (MBI), for various offenses to include: Unlawful Possession of a Machinegun, Possession of Unregistered Firearms and Explosives, Possession of Unregistered Suppressor, Theft of U.S. Government Property, and Interstate Threats to kill, injury and intimidate individuals.

2 - AFFIDAVIT

5. From approximately June 2007 through August 2012, **MONTGOMERY** worked as a subcontractor for DoD Contractor MBI through **MONTGOMERY'S** company, M&M Aviation. During the period of this contractual agreement, **MONTGOMERY** worked on various projects with the Air Force Research Laboratory (AFRL), located at Wright-Patterson Air Force Base (WPAFB) in Fairborn, Ohio. One of the projects involved the utilization of the AN/AAR-47 Missile Warning System (MWS) for testing and research purposes. Given this circumstance, while a sub-contractor of MBI, **MONTGOMERY** had access to various pieces of United States military and civilian aviation technology and intellectual and other proprietary property, including, but not limited to: the AN/AAR-47 Missile Warning System (MWS) and a Control, Countermeasures Set Display Unit. As detailed more fully below, the AN/AAR-47 Missile Warning System (MWS) and a Control, Countermeasures Set Display Unit were not permitted to leave the confines of WPAFB. **MONTGOMERY's** association with MBI was terminated in or around August 2012 because he no longer held the appropriate security clearances to continue work on the sensitive projects connected to AFRL.

6. On June 24, 2015, the Greene County, Ohio Sheriff's Office (GCSO) executed a search warrant, issued by the Xenia, Ohio Municipal Court, at **MONTGOMERY'S** residence located

3 - AFFIDAVIT

at 2302 Schnebly Road, Spring Valley, OH 45370. The purpose of
the warrant was to obtain evidence supporting a 'criminal
damaging' investigation in violation of provisions of the Ohio
Revised Code. Neighbors complained that, while **MONTGOMERY** was
shooting firearms at a back stop located on his property, rounds
from his gun were impacting into and damaging a building and
vehicles located on their adjoining property. **MONTGOMERY** denied
the allegations, yet bullet holes, recovered bullets, witnesses
and additional investigation suggested otherwise. Some of the
shooting, according to complainants and a GCSO Deputy, sounded
similar to that of machinegun fire.

7.   During the aforementioned search, investigators
seized more than one hundred fifty firearms, including
"homemade" rifles, approximately five "skids" of ammunition,
several firearms kits, numerous firearm parts including barrels,
a variety of receivers and a firearm building instruction manual
for a "Maadi-Griffin" .50 caliber rifle. The basement of
**MONTGOMERY'S** home was found to contain a lathe (with filings
observed upon it) and a drill press. The lathe and the drill
press were not seized. On-scene investigators suspected that
some of the firearms as well as firearm receivers seized
pursuant to the warrant were in-fact machineguns.

4 - AFFIDAVIT

8. In the weeks following the execution of said state search warrant, the GCSO provided the BATF with various opportunities to inspect the seized items. One of the firearms seized was described as a Fabrica, model Imbel, caliber 7.62, serial number 113841. Additional information gleaned from an examination of this firearm indicated its manufacturer/place of origin consisted of: Fabrica De ItaJuta, Brasil PAC7201-E113841 – Pacific Armament Corp., Modesto, CA FZ SA 7.62. The receiver of this firearm contained a selector switch with three positions. Xenia Police Detective Lon Etchison, a person knowledgeable and experienced in firearms and a SWAT team member, stated that when the selector switch was placed in the safe position, the firearm would not function. When the selector switch was placed in the semi-auto position, the firearm field tested as a semi-automatic weapon. When the selector switch was placed in the automatic position, the firearm field tested as a fully automatic firearm. Additional similar receivers were found among the numerous seized firearms parts. Moreover, Detective Etchison advised he suspected that the firearm was comprised of foreign made parts.

9. Additionally, during the search of **MONTGOMERY'S** residence pursuant to the said state search warrant, a suspected silencer, black in color, was found in plain view located in

5 - AFFIDAVIT

what appeared to be an office area of the living quarters. No typical manufacturer's markings, such as company name, model, caliber and serial number, were observed. Given the lack of markings, and based on BATF SA John Tilton's prior training and experience, this silencer appeared to be a homemade device. Additionally, a Walther pistol, model P22, .22 caliber, bearing serial number L222790 with a threaded barrel was also seized pursuant to the state search warrant. Contained in the same gun box as said handgun was an YHM silencer, model 22mite, caliber .22, bearing serial number M221502.

10. The information regarding this silencer with identifiable serial number was submitted to the National Firearms Act (NFA) Branch to determine to whom it may be registered. This search revealed that it, together with another identical silencer, (except for a different serial number), was registered to "Hush Me Now A Revocable Trust" of 2302 Schnebly Road, Spring Valley, OH. The associated ATF Form 4, Application for Tax Paid Transfer and Registration of Firearm, indicated **JOEL B. MONTGOMERY, Trustee**, signed the certification for both silencers on July 8, 2008. It should be noted that the GCSO located and seized only one of these two listed silencers during the execution of said state search warrant.

6 - AFFIDAVIT

11.   The NFA Branch advised that there were no other firearms registered to this trust entity or otherwise connected to said address.   A complete search for all known ATF Form 1, Applications to Make and Register a Firearm, related to said trust and/or said address was conducted.   A trust can legally be authorized to manufacture certain specific firearm related items.   In order to do so, the trust must first pay the required federal tax and properly file a required ATF Form 1.   The NFA Branch further advised that no such filings/records were found indicating any official authorizations were ever sought or granted to either **MONTGOMERY**, or any trust entity connected to him or his home address to manufacture NFA firearms, silencers or machineguns.

12.   Additionally, a notebook containing instructions on how to build Maadi-Griffin .50 caliber rifles was also seized pursuant to said state search warrant.   Indeed, two similar .50 caliber rifles, with no typical manufacturer markings were also seized by the GCSO.   There were several additional barrels found in a box similar to the ones used in the construction of these two said firearms.   At least one PMKMS/AKMS parts kit seized had a receiver that was at least partially completed.   There were several other kits/parts seized that were identified as 1919A6, AK kits, AR upper and lower receivers, FNFAL receivers and

7 - AFFIDAVIT

parts, and more.

13. Your Affiant has consulted with BATF SA Timur Housum on certain aspects of subject investigation. As a result of said consultations, your Affiant has become aware that there are certain firearms that may field test as being a fully automatic weapons, however may ultimately be later determined to not be considered a machinegun under NFA definitions and definitions. Alternatively, there are other firearms, although configured to shoot only in the semi-automatic mode that are legally determined under the NFA to qualify as machineguns because of the characteristics or configuration of the gun's receiver. Under certain circumstances, so-called "lightening links", and/or other components can be used to readily convert a semi-automatic firearm into a fully automatic firearm thereby legally qualifying as machineguns. Moreover, 18 U.S.C. § 922(r) makes it illegal for anyone to assemble from imported parts any semiautomatic rifle or shotgun prohibited from importation.

14. On July 22, 2015, pursuant to a Federal Search Warrant, BATF SA Tilton collected certain evidence previously seized by the GCSO. The evidence was transported to the National BATF Firearms Technology Branch (FTB) facility in West Virginia in order to permit Firearms Enforcement Officer(s) (FEO) to complete an in-depth forensic examination and analysis to

8 - AFFIDAVIT

determine the firearms' manufacturers, whether they were clandestinely made, and whether they functioned as originally designed. Several items contained kits/parts. The FTB was specifically tasked with determining whether individually or collectively, these said firearms after being readily assembled, qualified as either a Gun Control Act or NFA firearms.

15. Based upon a thorough examination, BATF FEO Ron Davis confirmed that the unmarked aforesaid suspected silencer was indeed considered a silencer for NFA purposes.

16. FEO Davis further examined a seized belt fed Rapid Fire, model 1919, caliber .308, serial number 1244, which was also marked as a "semi-automatic" firearm. He advised that the receiver of this weapon lacked the so-called "denial islands" that are required for semi-automatic model 1919 firearm receivers. Using a part, he found in and among the seized evidence collected from **MONTGOMERY'S** residence, he was able to demonstrate how the weapon's receiver would not accept the said part had the receiver been a semi-automatic receiver. As a result, FEO Davis opined that modifying other components to make this firearm fire in a semi-automatic mode, was not in and of itself, sufficient to disqualify this weapon as a machinegun.

17. Utilizing other parts that were seized from **MONTGOMERY'S** residence, FEO Davis was able to fire the said belt

9 - AFFIDAVIT

fed Rapid Fire, model 1919, caliber .308, serial number: 1244 as a fully automatic machinegun.

18.  On or about October 26, 2015 a Federal search warrant was executed at **MONTGOMERY'S** Spring Valley residence related to various suspected firearms offenses.  During the course of this search, various items of equipment purportedly belonging to the U. S. Air Force were observed in plain view by investigators.  Upon observing said equipment, the on-scene federal agents suspended the search operations until a second Federal search warrant could be obtained, thereby specifically authorizing them to search for items/property suspected to have been stolen and/or converted from the U. S. Air Force.

19.  After the second Federal search warrant was secured, on-scene agents immediately proceeded to execute said warrant at **MONTGOMERY'S** residence.  Among the items of evidence thereafter seized as suspected U. S. Government property were (a) the AN/AAR-47 Missile Warning System (MWS), including an Optical Sensor, Serial Number (SN) TJQ03548 (this item has an estimated value of approximately $40,000); and (b) a Control, Countermeasures Set Display Unit, SN TJQ02201 (this item has an estimated value of approximately $10,000); and (c) a Canon Powershot Digital Camera, SN 4422112876.

10 - AFFIDAVIT

20. As noted above, **MONTGOMERY** previously worked on sensitive Missile Warning projects at AFRL. This work utilized the AN/AAR-47 Missile Warning System (MWS) equipment for research, development and testing purposes. The MWS is utilized by all branches of the U. S. military on both fixed wing and rotary aircraft. The MWS is only permitted to be used by the U. S. Government and/or its designees. This equipment is only to be maintained at U. S. Government facilities and reservations and/or on aircraft utilized by the U. S. Government and/or its designees.

21. On November 4, 2015, AFRL personnel examined the MWS components previously seized from **MONTGOMERY'S** residence on October 26, 2015. They immediately identified both components as integral parts of the MWS, a system that was previously utilized for testing throughout the AFRL.

22. On November 6, 2015, **MONTGOMERY** and his attorney, Thomas Merritt, Esq. voluntarily appeared at the United States Attorney's Office in Dayton, OH to discuss the ramifications and the results of the October 26, 2015 Federal search warrants executed at **MONTGOMERY'S** residence, as well as the pending federal criminal investigation. Assistant United States Attorney (AUSA) Brent Tabacchi, BATF SA John Tilton, and FBI SA

11 - AFFIDAVIT

C.J. Freihofer attended this meeting.  At said meeting,
**MONTGOMERY** was confronted with the fact that U. S.  Government
Property was in-fact seized from his residence.  **MONTGOMERY**
advised that he was never told that he could or could not take
any of the government property with him upon termination of his
employment by MBI.  AUSA Tabacchi thereafter presented the
actual Optical Sensor for **MONTGOMERY** to view and examine at the
meeting seeking an explanation or response.  **MONTGOMERY**
acknowledged that the Optical Sensor did belong to the U. S.
Government, and was utilized by him during his AFRL testing
efforts.  Also, **MONTGOMERY** further advised that he must have
transported the Optical Sensor from his aircraft hangar located
in Springfield, Ohio to his Spring Valley residence.  He further
reiterated that nobody ever told him he could or could not keep
the Optical Sensor, and informed all present that the Optical
Sensor was obsolete and otherwise "old technology."

23.  On or about November 10, 2015, the AFRL was
requested by the FBI to examine their equipment inventory
records in order to determine whether certain seized pieces of
equipment were connected to AFRL.  Two specific units were
checked for, to wit: an optical sensor, SN TJQ03548, and a
Control, Countermeasures Set Display Unit, SN TJQ02201.  Both
items were ultimately determined to be property of the U. S.

12 - AFFIDAVIT

Government.  The AFRL was able to identify both components as having been on the inventory lists of the Aryzt Advanced Programs Branch.  During a physical inventory completed in June 2012, it was determined that the subject optical sensor was missing.  While complying with said request, AFRL officials also determined that the Control, Countermeasures Set Display Unit was also missing, yet had erroneously been maintained on the inventory.  AFRL has concluded the serial numbers on both said components seized from **MONTGOMERY'S** residence did indeed originate from AFRL.

24.  Following **MONTGOMERY'S** termination of employment with MBI, a physical inventory of relevant AFRL property and equipment was performed.  This inventory revealed that certain items of Government Furnished Equipment (GFE) were missing, including, but not limited to, a Canon Powershot digital camera, SN 4422112876.  This camera was determined by AFRL officials to be missing as of on about August 24, 2012.  This camera was last known to be used to document a Hostile Fire Indication (HFI) test setup procedure on about August 2, 2012.

25.  On about August 2, 2012, **MONTGOMERY** coordinated an Official Test and Evaluation at his Spring Valley residence.  According to AFRL/MBI personnel, this testing and analysis was

13 - AFFIDAVIT

related to the said HFI project.  The Canon Powershot digital
camera was allegedly used to document test setup for this HFI
test.

26.  On September 4, 2015, an MBI employee was
contacted by the FBI.  This individual stated he/she was
employed as an MBI contractor at the AFRL.  Two of the defense
contracts that this individual worked on were the Passive
Electro-Optic Threat and Target Detection Program (PETAD) and
Omni-Sentinel projects.  Since approximately 2003, this
individual had worked on AFRL contracts.  During this time
period, he/she specifically worked with **MONTGOMERY** on both the
PETAD and Omni-Sentinel projects, to include the MWS testing.
At the end of August 2012, approximately two days before
**MONTGOMERY** was terminated as a MBI subcontractor, this
individual confronted **MONTGOMERY** as he was observed departing ae
AFRL Research & Development Hangar on WPAFB carrying a high tech
Forward-Looking Infrared (FLIR) camera estimated to be worth
approximately $50,000.  When **MONTGOMERY** was asked by this
individual as to what he was doing with the FLIR camera,
**MONTGOMERY** responded that he was going to utilize it for some
type of research & development project.  This individual advised
**MONTGOMERY** that the project to which **MONTGOMERY** referred was not
a project he (**MONTGOMERY**) was directed or authorized to work on.

14 - AFFIDAVIT

The individual further advised **MONTGOMERY** to immediately return the FLIR camera to the hangar. **MONTGOMERY** complied with this directive and placed the FLIR camera back in the AFLR hangar.

27. Throughout the subject investigation, various WPAFB and AFRL officials who had oversight and/or supervisory responsibilities of various units/laboratories at the AFRL while **MONTGOMERY** was employed as a subcontractor for MBI were interviewed. None of these individuals indicated that they ever granted **MONTGOMERY** permission to retain any U. S. Government owned and/or Government Furnished Equipment (GFE) following his termination of employment with MBI.

28. Moreover, law enforcement officials connected with this investigation have learned that, since 2015, **MONTGOMERY** has made or attempted to make various technical and/or research related presentations to various groups, at various locations throughout the U.S. concerning and related to MWS.

29. On October 10, 2017, BATF received unsolicited information from an identified individual believed to be a long-time acquaintance of **MONTGOMERY.** This individual stated that as recent as October 5, 2017, **MONTGOMERY** had made alarming comments that prompted this individual to notify BATF. This individual

15 - AFFIDAVIT

went on to report that **MONGTOMERY** has made comments about "taking out" people. This individual went on to say that **MONTGOMERY** has revenge issues, and has tended to become fixated on going after people he had a grudge against, and/or believed may have previously wronged him or crossed him. **MONTGOMERY** told this individual he (**MONTGOMERY**) has to get out of town or he's seriously going to kill a lot of people. **MONTGOMERY** indicated that he has a case coming up and there's a new prosecutor who is trying to "make a name for himself". **MONTGOMERY** indicated that he is furious with everyone involved in the case. The individual stated **MONTGOMERY** has stated when he goes, he is going to take a lot of people with him. According to this individual, **MONTGOMERY** made alarming comments after the October 1, 2017 Las Vegas, Nevada mass shooting incident, in which this individual described comments made by **MONTGOMERY** criticizing the mass-shooter for failing to kill more people. This individual further advised **MONTGOMERY** may be setting explosive traps for law enforcement personnel who may enter his Spring Valley property. This individual stated he/she believes **MONTGOMERY** presently has an out-of-control drinking problem that has possibly started to consume his life and thought processes.

30. On or about October 12, 2017, the aforementioned identified individual provided BATF with access to text messages

16 - AFFIDAVIT

he/she previously received from **MONTGOMERY.** Extracts of some of these text messages include the following: "Building some more mortars for indirect fire at this point"

"One and a half mile range, should be good to rain the house with shrapnel with the feds"

"I'm taking my time. Letting the epoxy with the BB's cure. You got to make sure that the shrapnel is effective and spreads appropriately with a high explosives"

"You don't want to be like that dork and only kill 60 people and moon 500. You want to be able to kill at least half the people on the venue"

"That should have said wound"

"But he was only an accountant, I designed weapons for 20 years"

31. During previous 2015 searches of **MONTGOMERY's** residence, law enforcement officials observed indicia of explosive materials and precursors including, but not limited to: blasting caps. Law enforcement officials also observed various types and categories of materials and equipment that could be used to construct destructive devices as more fully referenced and described below. Law enforcement officials also observed an electronic media word document entitled "Anarchists

17 - AFFIDAVIT

Cookbook". Based upon both your Affiant's prior training, experience, coupled with discussions with BATF agents familiar with this investigation, this document serves as an instruction manual on how to construct improvised and otherwise homemade explosive devices.

32. Based upon reliable firsthand information of a person intimately knowledgeable of the interior confines of **MONTGOMERY's** residence, between the fall of 2013 and March 2015, wood and steel ammunition were containers stored in the basement of said residence. Said containers contained items described as blocks of green/gray clay with the label "C-4" printed on them in black coloring. Your Affiant is aware that C-4 is a well-known form of plastic explosives.

33. At approximately 7:22 PM on October 18, 2017, federal agents arrested **MONTGOMERY** pursuant to an arrest warrant (See Case No. 3:17mj481) issued by this Court pursuant to a criminal complaint sworn to by FBI SA Sue Ellen Clark. **MONTGOMERY's** arrest occurred adjacent to the Greene County Jail Facility located in Xenia, Ohio. Incident to arrest, the following cellular phone was removed from **MONTGOMERY's** person by law enforcement authorities, to wit: an LG G6 Smart phone; Model LG-LS993; MEID: 089-451-725-600-402-720. The phone number

18 - AFFIDAVIT

assigned to the aforesaid phone was 937-532-0168. The service provider for said telephone has been determined to be Sprint Spectrum, L.P. Prior to **MONTGOMERY'S** arrest, law enforcement officials had become aware this cell phone had previously been used to transmit and receive certain texts and voice messages concerning the topic of **MONTGOMERY'S** intended and illicit planned use of explosives and firearms and possible interstate threats to certain third parties.

34. Based upon the above referenced facts and circumstances gathered by law enforcement officials from source information, previously executed search warrants at **MONTGOMERY's** residence, witness interviews and text messages and telephone calls believed to be generated by **MONTGOMERY,** your Affiant believes there is probable cause to believe relevant evidence, fruits, and instrumentalities concerning the subject criminal investigation into above referenced suspected violations of federal laws, will be found in the Sprint Spectrum, L.P. records for telephone account number 937-532-0168 which is associated with LG G6 Smart phone; Model LG-LS993; MEID: 089-451-725-600-402-720.

35. On or about October 11, 2017, investigators associated with subject case caused a database search to be

19 - AFFIDAVIT

conducted that revealed phone number 937-532-0168 belonged to **MONTGOMERY**. As a result, on or about October 13, 2017, a preservation request letter was issued by law enforcement authorities to officials at Sprint Spectrum, L.P. asking that all records and other evidence in the possession of Sprint Spectrum, L.P. be preserved associated with said account. On or about October 17, 2017, Sprint Spectrum, L.P. issued a confirmation letter acknowledging receipt of said preservation letter. Pursuant to 18 U.S.C. § 2703(a), a search warrant or probable cause statement signed by a federal judge is thereafter required to release the contents of the subject stored data/communications.

### ITEMS TO BE SEARCHED

36. Based upon all of the above stated facts and circumstances, your Affiant seeks court authorization to search any and all stored content maintained by Sprint Spectrum, L.P. for the account for telephone number 937-532-0168, to include, but not limited to all associated accounts, telephone numbers, contact lists, stored images/photographs, subscriber and user records, IP connection logs, call detail records, alternate accounts, text messages and voice mail programs and files.

37. As such, legal authorization is sought in this application to forensically search and examine any and all stored electronic data maintained and preserved by Sprint Spectrum, L.P. concerning telephone account number 937-532-0168.

38. Based on the foregoing, I request that the Court issue the proposed search warrant.

_____
Michael Runnels
Special Agent
Federal Bureau of Investigation

Sworn to before me and subscribed in my presence this _30th_ day of November, 2017.

_____
SHARON L. OVINGTON
UNITED STATES MAGISTRATE JUDGE

21 - AFFIDAVIT